Good morning, your honors. May it please the court, Christy Hughes on behalf of Mr. Peterson. One of the main purposes of supervised release is rehabilitation, but the internet condition, the internet ban the district court imposed here, prevents Mr. Peterson from reintegrating into society and fostering his rehabilitation. It prevents a lot of legal uses that could help him achieve those goals. Things like going online to find housing, searching job postings, registering for social services, things like emailing his son. It's sort of amazing that people can be, you know, on these type of cases can seem to be fairly unsophisticated people otherwise, but they can be more sophisticated than the courts when it comes to accessing child pornography. So if we're talking about this condition, it seems that obviously we don't want him to be able to have the capacity to access pornography, right? Correct. So if the computer was one that could access pornography, even though he wants to look for houses, he's going to, that one's going to have to be regulated, right? Correct, and we're not challenging the monitoring condition here. He's still subject to search, he's still subject to monitoring. Well, but how can we, as an appellate panel, limit the internet condition to devices that have the capacity to access pornography, or must we remand it to the district court, or, I mean, how do we, you know, and if we remand it to the district court, let's just say you got a point that if everyone agrees, well, it could be interpreted broadly. If we send it back to the district court, but we don't give the district court any direction on what would be okay, then that there were, you know, boom, boom, back and forth, back and forth. I understand, Your Honor. Well, I know you love to come for oral arguments, but that being said, so what, you know, how do we, I'm assuming you're conceding that he shouldn't be able to have devices where he can look at pornography. Correct, but I mean, there's an explicit supervised release condition that says he can't access or view child pornography, and there's the monitoring, and there's the search. So I think this court could either remand with instructions for the district court to impose a condition that is do not use or possess devices that can connect to the internet to access child pornography, and the court has remanded in cases like Payne or Morgan to do those things. He doesn't have to have some sort of monitoring. He has to have some sort of monitoring if he wants to use one of those devices, and are you just saying he doesn't want to be monitored? No, no, we're not challenging the monitoring aspect of this at all. We're just challenging that the way it's written right now, it prohibits him from so many things that are good for him, that are going to help him on supervised release. The psychologist talked about how social isolation was really bad for him, and it was a risk factor for reoffending, and so if we're preventing him from emailing his son and his sister, or like I said, getting housing, registering for social services, reading the newspaper online, that's going to make him more and more socially isolated, and that's not good for his rehabilitation. So we think the internet condition, and even in your briefing, I think in one place quotes a different condition, an old condition. I'm looking at, just to be really clear, it doesn't mention the internet. It's ER 110. That's the one we're talking about? Yes, and I apologize. In the reply brief, I misquoted to the non-amended judgment, but it's ER 110. No worries. No, okay, as long as we're clear on that, then I go back to Judge Callahan's question. In a case called Nurki, we tried to we can't use that term. We've said that's unconstitutionally vague, but if we plug in the term, the definition used in Nurki, for example, and then just talk about a condition that says you can't send, you can't use any device that will allow you to send, receive, or possess the definition in Nurki, what would be wrong with that? Well, because I think everything, that essentially says you can't use any device that can send data over the internet, and so we're back to where we are now, I think. I think it's worse because, I mean, considerably worse. Frankly, I don't know what 110 means. I don't think I could comply with 110, sorry, the definition of ER 110. I agree. Because I don't know what these devices mean. I agree, and I don't think 1031 helps. When I'm using a device, I don't know, unless I ask my daughter, whether it's using a modem, dedicated connections of cellular networks, you know, there's the examples. I think my Fitbit would maybe violate this. I agree. But setting that aside, it strikes me that it is possible to craft, and we could do it, so that we don't have to just remand and keep telling the district courts to take another try at it, particularly where we know what the district court was trying to accomplish here. So could you circle back to Judge Callahan's question, which I think you're trying to answer when I interrupted you, looking at this condition, the one the court actually found. Saying you can't send or receive child pornography, I think is fine. That's already covered in another condition, though. I think saying that you can't use or possess a device that can send or receive child pornography, that's the problem. That using the device, it's too broad. Right. Okay. I think it needs to be, you can't use a device that's capable of accessing the internet to send or receive child pornography. I think it has to get at the content that the district court was concerned about here. You're not challenging the content restriction, you're challenging this function. Correct. Correct. So saying you can't use an internet-enabled device to send or receive child pornography is perfectly fine. He has no intention of viewing or accessing child pornography again. And again, there's a specific condition that says he can't, and we're not challenging that. We're not challenging the search or the monitoring. So if he uses one of these internet-enabled devices to check CNN online or any of these things, he's still subject to monitoring. He's still subject to search, which is sort of a fail-safe that is built in, you know, if the probation officer wants to check up on him. Yes, this question, the basis for this argument, is it based upon a void for vagueness, or is it based upon over-breath in relationship to the First Amendment? Well, we've raised sort of a number of alternative arguments. One is that it's so vague that no one of reasonable intelligence would understand what the devices are, as Judge Grissom pointed out. Any reason to vote at least. Correct. And that even if you did understand this, it targets absolutely everything under the sun, your Fitbit, your Apple Watch, your internet TV, all of these things, and all of the conduct that we engage in every day and that the Supreme Court said in Packingham everyone, especially convicted criminals, need to engage in in order to foster their reintegration into society. You challenged a number of conditions, and I think your second strongest challenge is one I'd like you to address, if you would, and that's the one about not loitering within 200 yards of a place where, I'm summarizing, where children might be present. And I think your point was that he shouldn't have to know in advance where kids might be, which is a fair point, but it struck me that this word loiter, which is the one I think you're concerned about, that struck me as protecting him, so that if he shows up someplace and there are a bunch of kids there he hasn't violated, he just can't hang out. He just can't hang around there. What is your response to that? Well, I think that that definition that your Honor gave about hanging around there isn't really necessarily clarified there. Isn't that what loitering means? Well, the probation officer, I mean, this Court and the Supreme Court have noted that loiter can be very vague and open to a lot of interpretations. It can be, but in this circumstance it strikes me as a protection for you because it's certainly not fair to say you can't even go someplace where, because you wouldn't know in advance where children might be. Correct. So this strikes me as easier for your client to comply with. Well, my response is the probation officer, this is at page 17 of the PSR, tried to clarify this and said that our agency defines loitering as remaining, lingering, or wandering in public or private places for the purpose of engaging in any lewd or otherwise illegal conduct for the intent of engaging in any sexual act. So there was this intent built into it. The probation officer proffered that. The district court ignored that doesn't have any of the intent aspects or purpose aspects. I see. And I think that's one of the problems with this loitering condition. The others are the ones that your Honor noted where he can't be expected to know who's at a place, the primary occupants or users. And the other problem is it's not limited in time. So he can't go to a park or a pool or a library, but there's no limitation that he can't go there when they are frequented by children. And so if there's a photography exhibit at the library at 6 p.m. when there's unlikely to be a lot of kids there, he can't attend that. He can't attend, you know, an adult bridge class at the library. These types of things he's not allowed to do because there's no time limitation built into the loitering condition. I'd like to unless your Honor's... Has any court ever held that this loitering condition was improper? Pardon your Honor? Has any other court ever held that this loitering provision wasn't somehow Well, in ZARA, this court did say, and it's unpublished, but this court did remand to say that this language, the plain language of it was at least ambiguous because it didn't say that you couldn't be there when there are primarily children there. And I think that was the district court's intent. We're not challenging the district court's intent. It's just that the way this is worded, it's just too broad. It captures really everything. And again, that was ZARA where this court remanded to say you need to clarify the time limitation. Counsel, this says other places primarily frequented by persons under the age of 18. And again, in Rudd, this court noted in a footnote that that could mean anything. That's a movie theater. That's a pizza place. So we argue that because there's no comma after library, that doesn't necessarily... Oh, this is the comma argument. But there's also the time limitation argument that, you know, even if that's a place primarily frequented, it's not limited to times when it's actually frequented by children. Thank you. Thank you. May it please the court, Daniel Zipf on behalf of the United States. Your Honor, this court has recognized the strong link between child pornography and the internet. And conditions like this one that allow the defendant to use the internet, but only in a way that the probation officer can monitor his use of the internet, have repeatedly been held to both be reasonably related to the goals of supervised release and not to deprive a greater liberty than is reasonably necessary. So it's our position that even as written, the condition in this case was not an abuse of discretion on the part of the... So, okay. Living in a world that obviously it's pretty hard now. It's sort of like in the old days, you didn't need to have a credit card. You can't live without a credit card now. There's just certain things that you're going to have to be able to do online and it's only going to get more. And so, if he uses one of those devices, then what in the condition allows him to still use it for other things? The condition allows him to essentially, when he's released from custody, meet with his probation officer and get approval for which phone or which computer he wants to use the internet on. And then to have monitoring commercial software installed on there to make sure that he's not using that phone or that computer to access child pornography. So he can have those devices, but they have to have the monitoring. They have to be approved by the probation officer and subject to the software that can monitor. So I think the concern that he's going to be restricted from looking for a job or all the other ways that you would use the internet, that's not going to be a problem here as long as the probation officer approves him to use a phone or a computer. But isn't it a problem? I appreciate that it says that he can use the device we're talking about with permission. I'm just having a hard time appreciating that he's going to know or that they're going to get this right. Because this is the revised condition that doesn't use the term internet, first of all. I'm looking at the one at ER 110. And it talks about anything that can communicate data via modem, dedicated connections or cellular networks and their peripheral equipment. I just don't know what that means, counsel. Well, Your Honor, I think a couple of responses. It's sort of clunky statutory language that the average person's not going to immediately know what all of those things mean. Right. So why don't we use the problem, the other conditions that I've seen, what the judge is basically trying to do here, I have no problem with. But by incorporating this statutory language is where I think things get fouled up, isn't it? I would disagree, Your Honor. I think there's a couple of factors that weigh against the idea that this is overly vague. First, this court in a couple of cases in Quinzon and in Phillips have stressed that you have to view the condition in the context of the other conditions and in the context of what the crime is and what the purpose of the supervisory of these things. Why does that cut in your favor? Opposing counsel is arguing that other conditions say very clearly he can't have pornography to use the... Right. But the fact remains that this is a child pornography case involving the internet. And that the monitoring condition is the very next sentence after that. So read together and read with a sort of common sense eye, that condition would not apply to devices that are incapable of accessing the internet in a way that would allow child pornography to be downloaded. What? Can you say that again? Forgive me. Sure. If you read the device prohibition with the next sentence that's the subject to monitoring, a common sense reading of that is not going to apply to refrigerators that access the internet that have no way of actually downloading child pornography. I mean, one of the problems in cases like this is... Of course, it doesn't say pornography. Let's talk about data here. It just talks about data. Right. But then the next sentence it talks about the monitoring or the, maybe it's the next condition down, but it then has the monitoring condition subject to approval. And she's not objecting to the monitoring condition. Right. I'm saying if you read the monitoring in combination with the data, a common sense reading is that it's not all internet, not refrigerators or Fitbits, but things that could conceivably be used to download pornography and that monitoring would even make sense. In addition, even putting aside, if you disagree with me... Does it include any audio? Or does this only concern images? No. I think a common sense reading based on the nature of the conviction and based on the would not include audio. It would include visual depiction. My law clerks voted two to two on that. I just don't think we know what that means. That's my concern. Assuming that we're not going to win on that argument, I think this court has also recognized in a number of cases in Quinzon and in Lye, that there is a role for the probation officer in cases like this. The probation officer is an arm of the court and we are operating in a real world here where the defendant is going to be released from custody and is going to meet with this probation officer and talk about these conditions, even signing an agreement as to what is going to be monitored and how it's going to be monitored. A NERCI case? I did. Yes, Your Honor. It talks about that very point. When we're talking about how to define the pornography and what we're talking about, there is not a definition that isn't at the end of the day going to have to be interpreted by a probation officer. If there's a problem with interpretation, it's going to try to do our best to make sure this is understood. Right, Your Honor. I think if this court is inclined to try to clarify it more, we would urge that you not hold that the district court abused its discretion and that it was illogical or implausible for the court to impose it as is, but to do, as the court's done in a number of cases in NERCI and Goddard and Quinzon, to simply offer guidance in the opinion to sort of cabin it in and say this doesn't have to be as broadly to cover things like Fitbit. It should be read to include things that can only access the internet to access explicit material. And on that point, I would note one recent case, the court took that tack in pain and sent it back down. And just as Your Honor recognized, the parties tried to work out what the new language would be, reimpose the condition, and now a notice of appeal has been filed in that case and potentially come back up for a fourth argument. So I think the best use of everyone's resources in this case, if there is a concern, is to simply, in the opinions, try to limit it or cabin it with the court's interpretation. As to the loitering condition, this court has, in four or five published opinions, affirmed virtually identical loitering conditions in the supervised release context. While that term loitering might have vagueness issues as a statute and the context, it has repeatedly been affirmed and the court was within its discretion in applying it here. I'm happy to answer any other questions. Thank you. Does it appear we have any additional questions? You've used all your time, but if you want one minute, so don't over... Don't tax me. Two very quick points. Everyone's talking about the probation officer maybe granting access later, but this court in Sales and in Lacoste noted that because there's no guarantee that the probation officer is going to grant that access and it could be revoked later, this still qualifies as an internet ban because we just don't know if he's going to be granted any of the permissible uses. Second, as to reading the monitoring condition with this internet condition, it doesn't help because I don't think, Mr. Peterson, I certainly don't know what types of devices can be monitored and what can't. Anyone can hack into anything, it seems, which makes me believe that the probation officer could install some sort of software into any number of these devices and determine what he's doing on the internet. Thank you, Your Honors. This matter will stand submitted.
judges: Callahan, Christen, Wu